UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE L. MARTIN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SELECT PORTFOLIO SERVICING, INC., and BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP, as Trustee and Acting as a Debt Collector,<br><br>　　　　　Defendants. | No. 2:16-cv-01860-TLN-KJN<br><br>**ORDER DENYING PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

This matter is before the Court on Plaintiff Renee L. Martin's ("Plaintiff") Application for Temporary Restraining Order. (ECF No. 2.) The Court has carefully considered Plaintiff's motion. For the reasons set forth below, Plaintiff's application is hereby DENIED.

**I.    FACTUAL BACKGROUND**

The Plaintiff is the owner of a property at 931 Oakbrook Drive, Fairfield, California 94534 (hereinafter "the Property"), acquired by a grant deed in 1988. (Compl., ECF No. 1 at ¶¶ 6, 13.) On or about December 9, 2004, Plaintiff refinanced the Property through WMC and "the loan was to be securitized in a trust known as Certificateholders of Morgan Stanley ABS Capital I Inc. Trust 2005-WMC3, Mortgage Pass-Through Certificate Series 2005-WMC3." (ECF No. 1 at ¶¶ 3, 14.) At some point "during the financial crisis" the Plaintiff got behind in her mortgage

payments. (ECF No. 1 at ¶ 3.) On or about September 1, 2012, a representative from Defendant Select Portfolio Servicing, Inc. (hereinafter "SPS") contacted Plaintiff and informed her that SPS would be "taking over the loan." (ECF No. 1 at ¶ 18.) Plaintiff advised the SPS representative that she was seeking a modification. (ECF No. 1 at ¶ 18.) Plaintiff alleges that she was advised by SPS to submit a "complete financial loan package for the modification," and that she did as requested. (ECF No. 1 at ¶ 18.)

On October 19, 2012, a representative from SPS named Megan Koontz contacted Plaintiff to inform her that "a new (Department of Justice)" loan modification was available and recommended that Plaintiff apply for this program. (ECF No. 1 at ¶ 22.) Plaintiff was also informed that three trial payments would be required and that if she successfully made all three trial payments the loan would be permanently modified. (ECF No. 1 at ¶ 23.) On or about November 19, 2012, Plaintiff received a call from SPS notifying her that her loan modification request had been approved and her first of three trial payments in the amount of $1,093.56 was due on December 1, 2012. Plaintiff claims she received a letter from SPS, dated November 15, 2012, confirming the three payments of $1,093.56 under the modification and stating that she could receive a principal reduction of $172,828.37.[1] (ECF No. 1 at ¶ 24.) Plaintiff claims to have made all three payments on time. (ECF No. 1 at ¶ 23.)

On January 8, 2013, after making the three required payments, Plaintiff contacted SPS "to determine the exact amount of the remaining principal on the loan." (ECF No. 1 at ¶ 25.) Plaintiff was told to contact "BAC[2] for that information." (ECF No. 1 at ¶ 25.) Plaintiff did contact BAC and was informed that as of August 12, 2012, the remaining principal balance of the loan was $278,155. (ECF No. 1 at ¶ 25.) Plaintiff was also informed that "[the loan] was transfer[ed] to the new servicer, SPS[,] for $278,155 and that was the entire balance owed." (ECF No. 1 at ¶ 25.) On February 8, 2013, Plaintiff contacted Megan Koontz at SPS and was advised that "she [would] be receiving the permanent modification any day now." (ECF No. 1 at ¶ 27.)

---

[1] Plaintiff makes reference to "EXHIBIT 1" for a copy of this letter, however no such exhibit was attached to the Complaint. (ECF No. 1 at ¶ 24.)
[2] BAC is undefined in the Complaint and the Court is unsure who this party is.

1    On March 4, 2013, Plaintiff again contacted SPS to inquire as to the status of her
2  modification.  (ECF No. 1 at ¶ 29.)  Plaintiff spoke with SPS representative Jerison Sanchez who,
3  according to Plaintiff, "attempted to misle[a]d Plaintiff and said that 'since all of your three
4  payments have been made timely, don't do anything else, you don't have to make any more
5  payments, because we SPS will adjust everything to permanent status any day now.'"  (ECF No.
6  1 at ¶ 29.)  Plaintiff spoke to another SPS representative later in March and yet still no
7  modification occurred.  (ECF No. 1 at ¶ 30.)  Plaintiff then received a letter from SPS dated June
8  24, 2013, stating that her home loan was not eligible for modification because "After being
9  offered Modification, you did not return the permanent modification documents by the requested
10  deadline."  (ECF No. 1 at ¶ 31; Exhibit 2 at 31.)

11   Plaintiff contacted SPS within the required 30 days to object to the decision stating that
12  she had never received a copy of any paperwork to sign.  (ECF No. 1 at ¶¶ 32, 33.)  At some
13  point during this time, Plaintiff requested SPS provide her with a "Qualified Written Report"
14  (QWR) because she was concerned about why her principal balance "kept dramatically increasing
15  instead of decreasing[] when payments were made."   (ECF No. 1 at ¶ 35.)  When the Plaintiff
16  received a package of information regarding the QWR from SPS, Plaintiff noticed among the
17  papers a letter from SPS dated July 25, 2013.  (ECF No. 1 at ¶  36; Exhibit 3 at 32.)  The July 25,
18  2013, letter informed Plaintiff that she was "approved for a principal reduction loan modification
19  under the U.S. Department of Justice and State Attorneys General national mortgage settlement."
20  (ECF No. 1 at 32.)  Plaintiff alleges that she never received this document prior to her QWR
21  request.  (ECF No. 1 at ¶ 36.)  Plaintiff further alleges that "In the Loan Modification Agreement,
22  [a] paragraph on the first page[] identifies SPS as ("Lender") instead of servicer."  (ECF No. 1 at
23  ¶ 37.)  Plaintiff states that she "never entered into an agreement with SPS as lender, therefore, the
24  lender of said loan, if any is WMC, not SPS."  (ECF No. 1 at ¶ 37.)  Plaintiff believes that "SPS []
25  negligently misrepresented to Plaintiff that they are the lender and not the servicer of the loan."
26  (ECF No. 1 at ¶ 37.)  Plaintiff alleges

27   there were gross deceptions in the modification, which Plaintiff did
    not agree to[,] for instance: (a) 'I acknowledge that I have been
28   advised that I am eligible for evaluation for a modification under

> the U.S. Treasury Department's Home Affordable Modification Program but I have voluntarily elected to proceed with this modification.' This is false, as Plaintiff had met all criteria for the U.S. Treasury and had performed all the terms and conditions. (b) SPS, as servicer wrote themselves into the agreement as the Lender. In the chain of title, SPS is not or never had been in the chain as lender [(c)] Additionally, SPS wanted to deceive[] Plaintiff with a balloon payment after end in the amount of $24,390.39. Balloon payments are contrary to any government modification plans.

(ECF No. 1 at ¶ 38.)

Plaintiff alleges "SPS has been deceitful and moving forward to quickly foreclose because none of the defendants [] have any lawful right to the property, there is no debt owning on the subject property, which has been paid off through credits from government programs and by Plaintiff." (ECF No. 1 at ¶ 39.) Plaintiff states that she continued to make her monthly payments in the amount of $1,093.56 since December 1, 2012 to present, "even though SPS never fulfilled their agreement." (ECF No. 1 at ¶¶ 28, 29.) Plaintiff claims her monthly loan payments for the months of May through October 2015 have all been returned by SPS and that SPS has sent regular correspondence requesting higher mortgage payments. (ECF No. 1 at ¶¶ 44, 46.) Plaintiff contends that neither SPS nor Barrett Daffin Frappier Treder & Weiss, LLP[3] ("Barrett") are the lawful parties to conduct a trustee sale because the "chain of title is broken and there is no lender, the property is not in default and there is no debt owning on the subject property." (ECF No. 1 at ¶ 47.)

On August 5, 2016, Plaintiff filed a complaint in this Court alleging nine causes of action: (1) Violation of the Servicing of Mortgage Loans Procedures Act (12 U.S.C. § 2605); (2) violations of the U.S. Department of Justice and/or U.S. Department of Treasury (Modifications); (3) Wrongful Foreclosure (Commenced); (4) Violations of California Homeowners Bill of Rights; (5) Quiet Title to Real Property; (6) Intentional Infliction of Emotional Distress; (7) Fair Debt Collection Practices Act; (8) Violations of (Pooling Service Agreement); and (9) Negligent Misrepresentation. (ECF No. 1.)  Also, on August 5, 2016, Plaintiff filed the instant application

---

[3] The ECF docket sheet captions the Defendant as "Barrett Daffin Frappier Turner & Engel, LLP as Trustee and Acting as a Debt Collector," however the Plaintiff refers to this Defendant as Barrett Daffin Frappier Treder & Weiss, LLP. The latter is the supported by the Exhibit 5 (Notice of Trustee's Sale) submitted as Exhibit 5 to Plaintiff's motion. (ECF No. 2 at 3.)

for temporary restraining order to prevent foreclosure of the Property.  (ECF No. 2.)

## II.     LEGAL STANDARD

A temporary restraining order is an extraordinary and temporary "fix" that the court may issue without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).  The purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing. *See* Fed. R. Civ. P. 65.  It is the practice of this district to construe a motion for temporary restraining order as a motion for preliminary injunction.  Local Rule 231(a); *see also Aiello v. One West Bank*, No. 2:10–cv–0227–GEB–EFB, 2010 WL 406092 at *1 (E.D. Cal. Jan. 29, 2010) ("Temporary restraining orders are governed by the same standard applicable to preliminary injunctions.") (internal quotation and citations omitted).

Therefore, the party requesting injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).  Although pro se pleadings are liberally construed, *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), they are not immune from the Federal Rules of Civil Procedure. *See Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995).  The propriety of a request for injunctive relief hinges on a significant threat of irreparable injury that must be imminent in nature. *Caribbean Marine Serv. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988).

Alternatively, under the so-called sliding scale approach, as long as the plaintiff demonstrates the requisite likelihood of irreparable harm and can show that an injunction is in the public interest, a preliminary injunction may issue so long as serious questions going to the merits of the case are raised and the balance of hardships tips sharply in plaintiff's favor. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–36 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after *Winter*).

### III. ANALYSIS

Plaintiff moves the court ex parte for a temporary restraining order preventing the foreclosure sale of her home, currently scheduled for August 10, 2016. Plaintiff alleges "violations of the Servicing of Mortgage Loans Procedures Act," but does not state a specific statutory violation. (ECF No. 1 at ¶ 49.) Plaintiff's cover sheet references 12 U.S.C. §2605. (ECF No. 2 at 1.) This statute requires that "Each person who makes a federally related mortgage loan [] disclose to each person who applies for the loan, at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding." 12 U.S.C. §2605(a). It furthers requires notice by transferor of loan servicing at the time of transfer and sets forth the timing and contents of such notice. 12 U.S.C. §2605(b), (c).

On close inspection of the facts alleged within the Complaint, Plaintiff has not alleged facts that support a violation of these provisions. Plaintiff does not state anywhere in her Complaint that the original lender failed at that time of the loan application to disclose whether the loan could be assigned, sold, or transferred to any other person at any time while the loan is outstanding. Plaintiff also does not allege that the transferor of her loan servicing did not contact her as required by the statute. To the contrary, the Plaintiff alleges that on or about September 1, 2012, SPS representative Karma Henday contacted Plaintiff and advised her that SPS would be "taking over the loan." (ECF No. 1 at ¶ 18.) Accordingly, it appears that the provisions of 12 U.S.C. §2605 were followed in Plaintiff's case.

Plaintiff also alleges non-specific violations of the U.S. Department of Justice and/or U.S. Department of Treasury, the California Homeowner's Bill of Rights, and Pooling Services Agreements. These allegations are too vague for the Court to assess. The Court cannot guess what statutory provisions the Plaintiff alleges Defendants have violated. The Plaintiff must state with more specificity the grounds on which she seeks relief. Nevertheless, even if Plaintiff were to clarify the grounds on which she seeks relief, the Court is not convinced that Plaintiff is likely to succeed on the merits of her case. Plaintiff's main contention seems to be that SPS and Barrett do not have legal authority as a servicer, lender or legal trustee to foreclose upon the Property.

(ECF No. 1 at ¶ 5.)  However, Plaintiff provides no facts, supporting documentation, or legal authority to support this contention.  While Plaintiff's factual background contains a detailed accounting of events up through her receipt of the June 25, 2013, SPS letter approving her modification, the details thereafter are unclear.  Plaintiff does not state anywhere in her Complaint that she signed the approved loan modification paperwork.  Plaintiff does not state that she engaged in a dialogue with SPS about ownership of the original loan as described in the loan modification agreement.  Plaintiff provides no facts or statements to demonstrate that SPS or Barnett have unlawfully become the lenders of her loan or are fraudulently misrepresenting their position to the Plaintiff.  Rather, the Plaintiff only states that "month after month" she continued to receive "all types of threatening letters from SPS that they will commence a foreclosure action against Plaintiff if the amounts of a monthly loan payment[] were not paid off."  (ECF No. 1 at ¶ 45.)  But again, Plaintiff makes no allegation that she signed the loan modification paperwork and has offered no facts to support that she is entitled to the reduced payment amount she is continuing to make.  Given these shortcomings in the Plaintiff's pleading, the Court is not convinced that Plaintiff could survive a motion to dismiss, let alone succeed on the merits of this case.  In addition, Plaintiff's motion fails to address the "likelihood of success" factor in her request for injunctive relief.  (*See* ECF No. 2)  As such, this Court cannot find that Plaintiff is likely to succeed on the merits of this case, and this factor weighs in favor of denying injunctive relief.

For these reasons, the Court finds that Plaintiff has not met her burden of showing a likelihood of success on the merits of this case.  Because Plaintiff cannot meet the first prong, the Court need not address the rest of the prongs. *See Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d at 1135 (*Winter* requires a plaintiff to make a showing on all of the *Winter* factors).

//
//
//
//

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's Application for Temporary Restraining Order (ECF No. 2) is hereby DENIED.

IT IS SO ORDERED.

Dated: August 9, 2016

Troy L. Nunley
United States District Judge