UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE L. MARTIN,<br><br>    Plaintiff,<br><br>    v.<br><br>SELECT PORTFOLIO SERVICING, INC., and BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP, as Trustee and Acting as a Debt Collector,<br><br>    Defendants. | No. 2:16-cv-01860-TLN-KJN<br><br>**ORDER DENYING PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

This matter is before the Court on Plaintiff Renee L. Martin's ("Plaintiff") Amended Application for Temporary Restraining Order. (ECF No. 6.) The Court previously issued an Order (ECF No. 5) denying Plaintiff's first Application for Temporary Restraining Order. In the Amended Application for Temporary Restraining Order, Plaintiff cites additional case law to support her motion. (ECF No. 6 at 3–4.) The Court has carefully considered Plaintiff's Amended Application. For the reasons set forth below, Plaintiff's application is hereby DENIED.

//

//

//

//

### I.   FACTUAL BACKGROUND[1]

The Plaintiff is the owner of a property at 931 Oakbrook Drive, Fairfield, California 94534 (hereinafter "the Property"), acquired by a grant deed in 1988.  (Compl., ECF No. 7 at ¶¶ 6, 13.)  On or about December 9, 2004, Plaintiff refinanced the Property through WMC and "the loan was to be securitized in a trust known as Certificateholders of Morgan Stanley ABS Capital I Inc. Trust 2005-WMC3, Mortgage Pass-Through Certificate Series 2005-WMC3."  (ECF No. 7 at ¶¶ 3, 14.)  At some point "during the financial crisis" the Plaintiff got behind in her mortgage payments.  (ECF No. 7 at ¶ 3.)   On or about September 1, 2012, a representative from Defendant Select Portfolio Servicing, Inc. (hereinafter "SPS") contacted Plaintiff and informed her that SPS would be "taking over the loan."  (ECF No. 7 at ¶ 18.)  Plaintiff advised the SPS representative that she was seeking a modification.  (ECF No. 7 at ¶ 18.)  Plaintiff alleges that she was advised by SPS to submit a "complete financial loan package for the modification," and that she did as requested.  (ECF No. 7 at ¶ 18.)

On October 19, 2012, a representative from SPS named Megan Koontz contacted Plaintiff to inform her that "a new (Department of Justice)" loan modification was available and recommended that Plaintiff apply for this program.  (ECF No. 7 at ¶ 22.)  Plaintiff was also informed that three trial payments would be required and that if she successfully made all three trial payments the loan would be permanently modified.  (ECF No. 7 at ¶ 23.)  On or about November 19, 2012, Plaintiff received a call from SPS notifying her that her loan modification request had been approved and her first of three trial payments in the amount of $1,093.56 was due on December 1, 2012.  Plaintiff received a letter from SPS, dated November 15, 2012, confirming the three payments of $1,093.56 under the modification and stating that she could receive a principal reduction of $172,828.37.[2]  (ECF No. 7 at ¶ 24.)  Plaintiff claims to have made

---

[1]     It appears to the Court that Plaintiff's First Amended Complaint (ECF No. 7) is identical to her original Complaint (ECF No. 1), expect for the addition of Exhibit 1 (a copy of the SPS letter dated November 15, 2012), the deletion of pages 2–10 of Exhibit 3, and the inclusion of Exhibit 5 (the Notice of Trustee's sale) that was originally included in the Application for Temporary Restraining Order (ECF 2-3 at 3–5).  Accordingly, the recitation of the facts in this Order is the same as the Court's previous Order with minor modifications to correct statements based on the additional exhibits.

[2]     Plaintiff's First Amended Complaint now includes a copy of this letter as "EXHIBIT 1".  (ECF No. 7 at 33–34.)

1 all three payments on time. (ECF No. 7 at ¶ 23.)

2     On January 8, 2013, after making the three required payments, Plaintiff contacted SPS "to
3 determine the exact amount of the remaining principal on the loan." (ECF No. 7 at ¶ 25.)
4 Plaintiff was told to contact "BAC[3] for that information." (ECF No. 7 at ¶ 25.) Plaintiff did
5 contact BAC and was informed that as of August 12, 2012, the remaining principal balance of the
6 loan was $278,155. (ECF No. 7 at ¶ 25.) Plaintiff was also informed that "[the loan] was
7 transfer[ed] to the new servicer, SPS[,] for $278,155 and that was the entire balance owed."
8 (ECF No. 7 at ¶ 25.) On February 8, 2013, Plaintiff contacted Megan Koontz at SPS and was
9 advised that "she [would] be receiving the permanent modification any day now." (ECF No. 7 at
10 ¶ 27.)

11     On March 4, 2013, Plaintiff again contacted SPS to inquire as to the status of her
12 modification. (ECF No. 7 at ¶ 29.) Plaintiff spoke with SPS representative Jerison Sanchez who,
13 according to Plaintiff, "attempted to misle[a]d Plaintiff and said that 'since all of your three
14 payments have been made timely, don't do anything else, you don't have to make any more
15 payments, because we SPS will adjust everything to permanent status any day now.'" (ECF No.
16 7 at ¶ 29.) Plaintiff spoke to another SPS representative later in March and yet still no
17 modification occurred. (ECF No. 7 at ¶ 30.) Plaintiff then received a letter from SPS dated June
18 24, 2013, stating that her home loan was not eligible for modification because "After being
19 offered Modification, you did not return the permanent modification documents by the requested
20 deadline." (ECF No. 7 at ¶ 31; Exhibit 2 at 35.)

21     Plaintiff contacted SPS within the required 30 days to object to the decision stating that
22 she had never received a copy of any paperwork to sign. (ECF No. 7 at ¶¶ 32, 33.) At some
23 point during this time, Plaintiff requested SPS provide her with a "Qualified Written Report"
24 (QWR) because she was concerned about why her principal balance "kept dramatically increasing
25 instead of decreasing[] when payments were made." (ECF No. 7 at ¶ 35.) When Plaintiff
26 received a package of information regarding the QWR from SPS, Plaintiff noticed among the
27 papers a letter from SPS dated July 25, 2013. (ECF No. 7 at ¶ 36; Exhibit 3 at 32.) The July 25,

28    [3]    BAC is undefined in the Complaint and the Court is unsure who this party is.

1  2013, letter informed Plaintiff that she was "approved for a principal reduction loan modification
2  under the U.S. Department of Justice and State Attorneys General national mortgage settlement."
3  (ECF No. 7 at 32.)  Plaintiff alleges that she never received this document prior to her QWR
4  request.  (ECF No. 7 at ¶ 36.)  Plaintiff further alleges that "In the Loan Modification Agreement,
5  [a] paragraph on the first page[] identifies SPS as ("Lender") instead of servicer."  (ECF No. 7 at
6  ¶ 37.)  Plaintiff states that she "never entered into an agreement with SPS as lender, therefore, the
7  lender of said loan, if any is WMC, not SPS."  (ECF No. 7 at ¶ 37.)  Plaintiff believes that "SPS []
8  negligently misrepresented to Plaintiff that they are the lender and not the servicer of the loan."
9  (ECF No. 7 at ¶ 37.)  Plaintiff alleges

> there were gross deceptions in the modification, which Plaintiff did not agree to[,] for instance: (a) 'I acknowledge that I have been advised that I am eligible for evaluation for a modification under the U.S. Treasury Department's Home Affordable Modification Program but I have voluntarily elected to proceed with this modification.' This is false, as Plaintiff had met all criteria for the U.S. Treasury and had performed all the terms and conditions. (b) SPS, as servicer wrote themselves into the agreement as the Lender. In the chain of title, SPS is not or never had been in the chain as lender [(c)] Additionally, SPS wanted to deceive[] Plaintiff with a balloon payment after end in the amount of $24,390.39. Balloon payments are contrary to any government modification plans.

(ECF No. 7 at ¶ 38.)

Plaintiff alleges "SPS has been deceitful and moving forward to quickly foreclose because none of the defendants [] have any lawful right to the property, there is no debt owning on the subject property, which has been paid off through credits from government programs and by Plaintiff."  (ECF No. 7 at ¶ 39.)  Plaintiff states that she continued to make her monthly payments in the amount of $1,093.56 since December 1, 2012 to present, "even though SPS never fulfilled their agreement."  (ECF No. 7 at ¶¶ 28, 29.)  Plaintiff claims her monthly loan payments for the months of May through October 2015 have all been returned by SPS and that SPS has sent regular correspondence requesting higher mortgage payments.  (ECF No. 7 at ¶¶ 44, 46.) Plaintiff contends that neither SPS nor Barrett Daffin Frappier Treder & Weiss, LLP[4] ("Barrett")

---

[4] The ECF docket sheet captions the Defendant as "Barrett Daffin Frappier Turner & Engel, LLP as Trustee and Acting as a Debt Collector," however the Plaintiff refers to this Defendant as Barrett Daffin Frappier Treder & Weiss, LLP. The latter is the supported by the Exhibit 5 (Notice of Trustee's Sale) submitted as Exhibit 5 to

are the lawful parties to conduct a trustee sale because the "chain of title is broken and there is no lender, the property is not in default and there is no debt owning on the subject property." (ECF No. 7 at ¶ 47.)

On August 8, 2016, Plaintiff filed an Amended Complaint in this Court alleging nine causes of action: (1) Violation of the Servicing of Mortgage Loans Procedures Act (12 U.S.C. § 2605); (2) violations of the U.S. Department of Justice and/or U.S. Department of Treasury (Modifications); (3) Wrongful Foreclosure (Commenced); (4) Violations of California Homeowners Bill of Rights; (5) Quiet Title to Real Property; (6) Intentional Infliction of Emotional Distress; (7) Fair Debt Collection Practices Act; (8) Violations of (Pooling Service Agreement); and (9) Negligent Misrepresentation. (ECF No. 7.)

## II.    LEGAL STANDARD

A temporary restraining order is an extraordinary and temporary "fix" that the court may issue without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing. *See* Fed. R. Civ. P. 65. It is the practice of this district to construe a motion for temporary restraining order as a motion for preliminary injunction. Local Rule 231(a); *see also Aiello v. One West Bank*, No. 2:10–cv–0227–GEB–EFB, 2010 WL 406092 at *1 (E.D. Cal. Jan. 29, 2010) ("Temporary restraining orders are governed by the same standard applicable to preliminary injunctions.") (internal quotation and citations omitted).

Therefore, the party requesting injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). Although pro se pleadings are liberally construed, *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), they are not immune from the Federal Rules of Civil Procedure. *See Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995). The Plaintiff's motion. (ECF No. 2 at 3.)

propriety of a request for injunctive relief hinges on a significant threat of irreparable injury that must be imminent in nature. *Caribbean Marine Serv. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988).

Alternatively, under the so-called sliding scale approach, as long as the plaintiff demonstrates the requisite likelihood of irreparable harm and can show that an injunction is in the public interest, a preliminary injunction may issue so long as serious questions going to the merits of the case are raised and the balance of hardships tips sharply in plaintiff's favor. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–36 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after *Winter*).

### III.   ANALYSIS

Plaintiff moves the court ex parte for a temporary restraining order preventing the foreclosure sale of her home, currently scheduled for August 10, 2016. As stated in the Court's previous Order, the Plaintiff's legal claims are unclear. In her Amended Application, Plaintiff cites *Glaski v. Bank of America*, 218 Cal. App. 4th 1079, 1097 (2013) as analogous to her situation. *Glaski* addresses the issue of wrongful foreclosure, one of Plaintiff's causes of action.

"[Wrongful foreclosure] is an equitable action to set aside a foreclosure sale, or an action for damages resulting from the sale, on the basis that the foreclosure was improper." *Sciarratta v. U.S. Bank Natl. Assn.*, D069439, 2016 WL 2941194 (Cal. App. 4th Dist. May 18, 2016). "A trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent, or willfully oppressive sale of property under the power of sale contained in the mortgage or deed of trust." *Munger v. Moore*, 11 Cal. App. 3d 1, 7 (1970); *see also Alvarado v. Bank of America, N.A.*, No. CV F 12–2078 LJO GSA, 2013 WL 28584, at *9 (E.D. Cal. 2013). Under California law, "a borrower [has] standing to challenge an assignment of her note and deed of trust on the basis of defects allegedly rendering the assignment void." *Morgan v. Aurora Loan Services*, LLC, No. 14–55203, 2016 WL 1179733, at *2 (9th Cir. March 2016) (citing *Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 931 (Cal. 2016)). However, a borrower does not have standing to challenge defects in trust assignments that are

merely voidable. *Morgan*, No. 14–55203 at *3; *Yvanova*, 62 Cal. 4th at 939. As the California Supreme Court stated, "[w]hen an assignment is merely voidable, the power to ratify or avoid the transaction lies solely with the parties to the assignment" and consequently, a plaintiff who sets forth a claim on defects within the assignment that render it voidable is attempting to "assert an interest belonging solely to the parties to the assignment rather than to herself." *Id.* at 936; *see also Lundy v. Selene Finance, LP*, Case No. 15-cv-05676-JST, 2016 WL 1059423, at *9 (N.D. Cal. March, 17, 2016). Thus, in order for the Court to determine if the Plaintiff has standing, the Court must determine whether a post-closing date transfer occurred and whether that assignment of her note and deed of trust rendered the assignment void, or merely voidable. Unfortunately the Plaintiff's Complaint and Application for Temporary Restraining Order are devoid of information to assist the Court in making this determination.

Plaintiff alleges that "defendants have violated the terms of the trust by not adhering to [the requirement that] all transfers must have occurred within 90 days of closing of the loan, which in this case would be no later than June 5, 2004." Plaintiff also asserts that "[t]he chain of title is broken and none of these defendant are in the chain of title; specifically, defendants have violated the trust by failing to properly record and transfer into the trust all required documents. The original owner WMC has sold the loan and none of the defendants have any interest in the plaintiff's loan. Furthermore, there is no debt still remaining or owed by Plaintiff, which Plaintiff will prove." Even giving the Plaintiff every benefit of the doubt as to these allegations, there is insufficient information about the assignment language in the deed of trust in order to determine Plaintiff's likelihood of success on the merits of this case. The Plaintiff did not summarize or attach the deed of trust in order to assist the Court in determining whether the assignment of this loan, if made outside the 90 day closing period, renders the assignment void or voidable. Accordingly, the Court has no information in order to determine what the deed actually says. The Court does not even know what law governs the formation of the trust in which Plaintiff's loan was to be securitized in order to determine what law to apply in determining whether the assignment is void or voidable.

Given these shortcomings in the Plaintiff's pleading, the Court finds that Plaintiff has not

met her burden of showing a likelihood of success on the merits of this case. Eastern District Local Rule 231 requires a party filing a Temporary Restraining Order to file "a brief on all relevant legal issues presented by the motion." E.D. Cal L.R. 231(c)(3). Given the extraordinary remedy that a temporary restraining order represents, the Court requires full briefing on the relevant facts in order to determine the likelihood of success on the merits. The Court understands the Plaintiff is representing herself in this action, however pursuant to Local Rule 183, persons appearing *in propria persona* are obliged to comply with the same rules of court as counsel. The Plaintiff simply has not provided enough factual or legal context in order for the Court to determine if her claim is likely to be successful on the merits. Because Plaintiff cannot meet the first prong of the *Winter* test, the Court need not address the rest of the prongs. *See Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d at 1135 (*Winter* requires a plaintiff to make a showing on all of the *Winter* factors).

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Application for Temporary Restraining Order (ECF No. 6) is hereby DENIED.

IT IS SO ORDERED.

Dated: August 10, 2016

Troy L. Nunley
United States District Judge