UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE L. MARTIN, | No. 2:16-cv-1860-TLN-KJN PS |
| Plaintiff, | |
| v. | ORDER |
| SELECT PORTFOLIO SERVICING, INC., et al., | |
| Defendants. | |

INTRODUCTION

Plaintiff Renee L. Martin, who proceeds without counsel,[1] initially commenced this action on August 5, 2016, and paid the filing fee. (ECF No. 1.) Presently pending before the court is defendant Select Portfolio Servicing, Inc.'s ("SPS" or defendant) motion to dismiss plaintiff's first amended complaint. (ECF No. 17.)[2] Plaintiff has opposed the motion, and defendant filed a

---

[1] This action proceeds before the undersigned pursuant to Local Rule 302(c)(21).

[2] Since the filing of this action, the assigned district judge, Judge Nunley, has on three occasions denied plaintiff's request for a temporary restraining order to halt the foreclosure sale of plaintiff's property. (ECF Nos. 5, 10, 19.) Plaintiff has appealed Judge Nunley's denial of injunctive relief to the Ninth Circuit Court of Appeals. (ECF Nos. 20, 22.) Nevertheless, to date the Ninth Circuit has not issued any order staying this action during the pendency of the appeal. As such, the court proceeds to consider SPS's motion to dismiss.

1

reply brief. (ECF Nos. 23, 25.)[3] After carefully considering the court's record, the written briefing, and the applicable law, the court GRANTS the motion, but with leave to amend.

BACKGROUND

The background facts are taken from plaintiff's first amended complaint, unless otherwise noted.

Plaintiff is alleged to be the owner of a property located at 931 Oakbrook Drive, Fairfield, California 94534 (hereinafter the "Property"), acquired by a grant deed in 1988. (See First Amended Complaint, ECF No. 7 ["FAC"] ¶¶ 6, 13.) Around December 9, 2004, plaintiff "purportedly refinanced" the Property with "WMC"[4] and the "purported loan was to be securitized in a trust known as Certificateholders of Morgan Stanley ABS Capital I Inc. Trust 2005-WMC3, Mortgage Pass-Through Certificate Series 2005-WMC3." (FAC ¶¶ 3, 14.) At some point "[d]uring the financial crisis," plaintiff got behind in her mortgage payments. (FAC ¶ 3.) On or about September 1, 2012, a representative from SPS contacted plaintiff and informed her that SPS would be "taking over the loan." (FAC ¶ 18.) Plaintiff advised the SPS representative that plaintiff was seeking a modification. (Id.) Plaintiff alleges that she was advised by SPS to submit a "complete financial loan package for the modification," and that she complied with that request. (Id.)

On October 19, 2012, a representative from SPS named Megan Koontz, who identified herself as plaintiff's account manager, contacted plaintiff to inform her that "a new (Department of Justice)" loan modification was available and recommended that plaintiff apply for that program. (FAC ¶ 22.) Plaintiff was also informed that three trial payments would be required, and that if she successfully made all three trial payments, the loan would be permanently modified. (Id.) Around November 19, 2012, plaintiff received a call from SPS notifying her that she had been approved and that her first of three trial payments in the amount of $1,093.56 was

---

[3] Pursuant to Local Rule 230(g), the motion was submitted for decision without oral argument on the record and written briefing.

[4] WMC is undefined in plaintiff's first amended complaint, and the court is unsure who this entity is.

2

due on December 1, 2012.  (FAC ¶ 23.)  Shortly thereafter, plaintiff received a letter from SPS, dated November 15, 2012, confirming the three trial payments of $1,093.56, and stating that plaintiff could receive a principal reduction of $172,828.37.  (FAC ¶ 24, Ex. 1.)  Plaintiff claims she ultimately made all three payments on time.  (FAC ¶ 24.)

On January 8, 2013, plaintiff contacted SPS "to determine the exact amount of the remaining principal on the loan."  (FAC ¶ 25.)  Plaintiff was told to "contact BAC[5] for that information."  (Id.)  Plaintiff then contacted BAC and was informed that, as of August 15, 2012, the remaining principal balance of the loan was $278,155.  (Id.)  Plaintiff was also informed that the loan was transferred to the new servicer, SPS, for $278,155, and "that was the entire balance owed."  (Id.)  On February 8, 2013, plaintiff contacted Megan Koontz at SPS and was advised that "she [would] be receiving the permanent modification any day now."  (FAC ¶ 27.)

On March 4, 2013, plaintiff again contacted SPS to inquire as to the status of her modification.  (FAC ¶ 29.)  Plaintiff spoke with SPS representative Jerison Sanchez, who, according to plaintiff, attempted to mislead her, stating "since all of your three payments have been made timely, don't do anything else, you don't have to make any more payments, because we SPS will adjust everything to permanent status any day now."  (Id.)  Plaintiff alleges that she nevertheless continued to make all subsequent payments.  (Id.)  Later in March 2013, plaintiff spoke to another SPS representative who stated that the loan was still "in underwriting for review of permanent status."  (FAC ¶ 30.)  Thereafter, plaintiff received a letter from SPS dated June 24, 2013, stating that her home loan was not eligible for modification because "[a]fter being offered Modification, you did not return the permanent modification documents by the requested deadline."  (FAC ¶ 31, Ex. 2.)

Plaintiff contacted SPS on July 18, 2013, within the required 30 days to object to the decision, pointing out that plaintiff had never received a copy of any paperwork to sign.  (FAC ¶¶ 32, 33.)  The SPS representative stated that she would re-send the documents to plaintiff.  (FAC ¶ 34.)  At some point during this time, plaintiff requested SPS to provide her with a "Qualified

---

[5] BAC is undefined in plaintiff's first amended complaint, and the court is unsure who this entity or department is.

3

Written Report [QWR]" because she was concerned about why her principal balance "kept increasing dramatically instead of decreasing[] when payments were made." (FAC ¶ 35.) When plaintiff later received a package of information regarding the QWR from SPS, plaintiff noticed among the papers a letter from SPS dated July 25, 2013. (FAC ¶ 36, Ex. 3.) The July 25, 2013 letter informed plaintiff that she was "approved for a principal reduction loan modification under the U.S. Department of Justice and State Attorneys General national mortgage settlement." (Id., Ex. 3.) Plaintiff alleges that she had never received that document prior to receiving SPS's response to her QWR request. (FAC ¶ 36.) Plaintiff further alleges that "[i]n the Loan Modification Agreement, [a] paragraph on the first page[] identifies SPS as ("Lender") instead of servicer." (FAC ¶ 37.) Plaintiff states that she "never entered into an agreement with SPS as lender, therefore, the lender of said loan, if any is WMC, not SPS." (Id.) Plaintiff believes that "SPS [] negligently misrepresented to Plaintiff that they are the lender and not the servicer of the loan." (Id.) Plaintiff further alleges that:

> there were gross deceptions in the modification, which Plaintiff did not agree to[,] for instance: (a) 'I acknowledge that I have been advised that I am eligible for evaluation for a modification under the U.S. Treasury Department's Home Affordable Modification Program but I have voluntarily elected to proceed with this modification.' This is false, as Plaintiff had met all criteria for the U.S. Treasury and had performed to all the terms and conditions. (b) SPS, as servicer wrote themselves into the agreement as the Lender. In the chain of title, SPS is not or never had been in the chain as the lender [(c)] Additionally, SPS wanted to deceive[] Plaintiff with a balloon payment after end in the amount of $24,390.49. Balloon payments are contrary to any government modification plans.

(FAC ¶ 38.)

Plaintiff alleges that "SPS has been deceitful and moving forward to quickly foreclose because none of the defendants [] have any lawful rights to the property, there is no debt owing on the subject property, which has been paid off through credits from government programs and by Plaintiff." (FAC ¶ 39.) Plaintiff states that she continued to make her monthly payments in the amount of $1,093.56 from December 1, 2012 to the present, "even though SPS never fulfilled their agreement." (FAC ¶¶ 28, 29.) Plaintiff claims her monthly loan payments for the months of

4

May through October 2015 have all been returned by SPS and that SPS has sent regular correspondence requesting higher mortgage payments. (FAC ¶¶ 44, 46.) According to plaintiff, SPS also continually called plaintiff, sometimes 3-4 times a day, demanding payment. (FAC ¶¶ 41, 43.) Plaintiff contends that neither SPS nor defendant Barrett Daffin Frappier Treder & Weiss, LLP[6] ("Barrett") is the lawful party to conduct a trustee sale because the "chain of title is broken and there is no lender, the property is not in default and there is no debt owing on the subject property." (FAC ¶ 48.)

Based on the above, plaintiff's first amended complaint asserts nine claims: (1) violation of the Servicing of Mortgage Loans Procedures Act (12 U.S.C. § 2605); (2) violations of the U.S. Department of Justice and/or U.S. Department of Treasury (modifications); (3) wrongful foreclosure (commenced); (4) violations of the California Homeowners Bill of Rights; (5) quiet title to real property; (6) intentional infliction of emotional distress ("IIED"); (7) violation of the Fair Debt Collection Practices Act ("FDCPA"); (8) violations of a pooling service agreement; and (9) negligent misrepresentation. (See generally FAC.)

The instant motion to dismiss followed.

LEGAL STANDARD

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint. Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009). Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v.

---

[6] The court's docket sheet lists the defendant as "Barrett Daffin Frappier Turner & Engel, LLP," but plaintiff refers to this defendant as "Barrett Daffin Frappier Treder & Weiss, LLP." The latter name is supported by the Notice of Trustee's Sale attached to plaintiff's first amended complaint as Exhibit 5, which identifies Barrett Daffin Frappier Treder & Weiss, LLP as the appointed trustee under the deed of trust. (FAC, Ex. 5.)

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss for failure to state a claim, the court accepts all of the well-pled factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007). The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Paulsen, 559 F.3d at 1071. The court must construe a *pro se* pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in her complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); see also Hebbe v. Pliler, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (stating that courts continue to construe *pro se* filings liberally even when evaluating them under the standard announced in Iqbal).

DISCUSSION

Even when liberally construed, plaintiff's first amended complaint fails to allege sufficient facts for the court to draw a reasonable inference that defendants are liable for the misconduct alleged.

Plaintiff's first claim alleges "violations of the Servicing of Mortgage Loans Procedures Act," but does not state a specific statutory violation. (FAC ¶ 49.) The first amended complaint's caption broadly references 12 U.S.C. § 2605. (FAC at 1.) That statute requires, in part, that "[e]ach person who makes a federally related mortgage loan shall disclose to each person who applies for the loan, at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding." 12 U.S.C. §2605(a). It furthers requires notice by the transferor and transferee at the time of transfer. See 12 U.S.C. § 2605(b), (c). Here, plaintiff has not alleged facts that support a violation of those provisions. Plaintiff does not allege that the original lender failed to disclose

that servicing of the loan could be assigned, nor does plaintiff explain how SPS could be liable for any such failure. Furthermore, plaintiff does not allege that she failed to receive notice of the transfer in this case. To the contrary, plaintiff alleges that, on or about September 1, 2012, SPS contacted plaintiff and advised her about the loan's transfer. (FAC ¶ 18.) As such, plaintiff's first claim, as pled, is subject to dismissal.

Plaintiff's second, fourth, and eighth claims allege non-specific violations of the "U.S. Department of Justice and/or U.S. Department of Treasury (Modifications)"; the California Homeowners Bill of Rights; and a pooling service agreement, respectively. Additionally, plaintiff's third claim of wrongful foreclosure and fifth claim of quiet title appear to be largely premised on such non-specific violations. The allegations pertaining to those claims are too vague for the court to assess. The court cannot guess what statutory provisions plaintiff alleges defendants have violated, and it is plaintiff's obligation to state with more specificity the grounds on which she seeks relief.

Plaintiff's main contention appears to be that SPS and Barrett do not have legal authority as a servicer, lender, or legal trustee to foreclose upon the Property. (FAC ¶ 5.) However, plaintiff provides no well-pled factual allegations or legal authority to support that contention. Although the first amended complaint's factual background section contains a detailed accounting of events leading up to plaintiff's eventual receipt of the July 25, 2013 letter approving plaintiff's principal reduction loan modification, the details thereafter are unclear. Plaintiff does not allege anywhere that she actually signed the loan modification paperwork, or any other facts showing that she is entitled to the reduced payment amount she is purportedly continuing to make. Plaintiff also provides no factual allegations plausibly demonstrating that SPS or Barrett have unlawfully become the lenders of her loan or are fraudulently misrepresenting their position to plaintiff. Instead, the first amended complaint contains numerous illusory references to the chain of title having been broken, there being no true lender, and plaintiff no longer owing any debt on the Property (despite admitting that she defaulted on her regular payments and supposedly continues to make reduced payments).

Therefore, the second, third, fourth, fifth, and eighth claims are dismissed.

Plaintiff's sixth claim for IIED also fails. "To sufficiently support a claim of intentional infliction of emotional distress a plaintiff must show the following elements:  (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.  Conduct is outrageous if it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." Aguinaldo v. Ocwen Loan Serv., LLC, 2012 WL 3835080, at *7 (N.D. Cal. Sept. 4, 2012) (citing Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 1001 (1993)) (internal citations omitted and internal punctuation modified).

Here, in support of her IIED claim, plaintiff alleges that defendants caused plaintiff severe emotional distress by sending her correspondence threatening foreclosure and actually commencing foreclosure proceedings.  Even though such correspondence and proceedings undoubtedly caused plaintiff some distress, those actions simply do not amount to extreme and outrageous conduct for purposes of an IIED claim.  See Aguinaldo, 2012 WL 3835080, at *7 (collecting cases and noting that "courts have found as a matter of law that foreclosing on property does not amount to the 'outrageous conduct' required to support a claim for intentional infliction of emotional distress").  Consequently, the IIED claim is dismissed.

Plaintiff's seventh claim for violation of the FDCPA likewise fails to state a claim.  To adequately plead a claim under the FDCPA, a plaintiff must allege facts showing that the defendant is a debt collector for purposes of the statute.  Schlegel v. Wells Fargo Bank, N.A., 720 F.3d 1204, 1208 (9th Cir. 2013).  "The FDCPA defines the phrase 'debt collector' to include: (1) 'any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts,' and (2) any person 'who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'"  Id. (citing 15 U.S.C. § 1692a(6)).  In this case, the first amended complaint fails to plead any non-conclusory factual allegations plausibly suggesting that SPS is a debt collector for purposes of the FDCPA, i.e., that the principal purpose of its business is the collection of debts or that it regularly collects debts owed or due *another*.  Furthermore, although the Notice of

Trustee's Sale contains standard boilerplate language stating that Barrett is collecting a debt and that "any information obtained will be used for that purpose" (FAC, Ex. 5), Barrett's role in this matter appears to be limited to initiating foreclosure proceedings as the designated trustee. Given that "district courts in the Ninth Circuit have consistently concluded that nonjudicial foreclosure actions do not constitute debt collection under the FDCPA to the extent a defendant's actions are limited to those necessary to effectuate the nonjudicial foreclosure," see Barria v. Wells Fargo Bank, N.A., 2016 WL 474319, at *5 (E.D. Cal. Feb. 8, 2016) (citing cases), it does not appear that Barrett qualifies as a debt collector for purposes of the FDCPA.

As such, the FDCPA claim is subject to dismissal.

Finally, plaintiff's ninth claim for negligent misrepresentation is not viable under the facts alleged. "To allege a cause of action for negligent misrepresentation, [a] [p]laintiff must plead: (1) the misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentation; and (5) resulting damage." Rockridge Trust v. Wells Fargo, N.A., 985 F. Supp. 2d 1110, 1162 (N.D. Cal. Sep. 25, 2013). "In addition, [a] [p]laintiff must allege the existence of a duty of care." Id. at 1163.

Here, plaintiff alleges that defendants misrepresented their interests in the Property, because they have no lawful interest in the Property and there is no debt owing on the Property. Plaintiff's allegations in that regard are vague and conclusory, and insufficient to state a claim. As outlined above, in other portions of the complaint, plaintiff further alleges that SPS made misrepresentations by telling plaintiff not to make any further payments, but she also claims that she continued to make the payments anyway. As such, there does not appear to have been reliance on, and resulting damages from, any of those alleged misrepresentations. In any event, plaintiff fails to allege any facts suggesting that defendants owed plaintiff a duty of care. See Becker v. Wells Fargo Bank, N.A., 2014 WL 3891933, at **19-21 (E.D. Cal. Aug. 7, 2014) (collecting numerous cases and noting that "the majority of cases that have addressed the issue of whether a financial institution owes a duty to the borrower when engaging in the loan modification process have resulted in a holding that such activity generally does not exceed the

traditional scope of a money lender, thus resulting in the lack of a duty of care owed by the lender.").

Therefore, plaintiff's negligent misrepresentation claim must be dismissed.

In sum, the court concludes that all of plaintiff's claims in the first amended complaint are subject to dismissal. Nevertheless, in light of plaintiff's *pro se* status, the court, having now provided plaintiff with notice of the deficiencies of her claims, finds it appropriate to grant plaintiff an opportunity to amend. However, the court is cognizant of the fact that plaintiff has already been advised of the deficiencies of her claims on at least two prior occasions by the district judge and now by virtue of this order. As such, plaintiff is cautioned that the court is disinclined to permit further amendment.

If plaintiff elects to file an amended complaint, it shall be captioned "Second Amended Complaint"; shall cure the deficiencies outlined above; and shall comply with the Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 11.

Plaintiff is informed that the court cannot refer to a prior complaint or filing in order to make any second amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading or filing. As a general rule, an amended complaint supersedes prior versions of the complaint, and once the second amended complaint is filed, the original and first amended complaint no longer serve any function in the case.

Importantly, nothing in this order requires plaintiff to file a second amended complaint. If plaintiff concludes that she is unable to amend her complaint in compliance with the court's order or no longer wishes to pursue the action in federal court, plaintiff may alternatively file a notice of voluntary dismissal of her claims without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. SPS's motion to dismiss (ECF No. 17) is granted.
2. The first amended complaint is dismissed, but with leave to amend.

3. Plaintiff shall file any second amended complaint in accordance with this order within 28 days. Alternatively, plaintiff may file a notice of voluntary dismissal of the action without prejudice within 28 days.

4. Failure to file either a second amended complaint or a notice of voluntary dismissal by the required deadline may result in the imposition of sanctions, including potential dismissal of the action with prejudice pursuant to Federal Rule of Civil Procedure 41(b).

5. The December 15, 2016 status (pretrial scheduling) conference in this matter is vacated, subject to rescheduling at a later juncture.

IT IS SO ORDERED.

Dated: October 27, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE